IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

Plaintiff

v.                                                      CRIMINAL NO.  15-00361 (GAG)

RIVERA-HERNÁNDEZ, et al.

Defendants.

**OPINION and ORDER**

In this Sherman Act, 15 U.S.C. § 1 (2004) antitrust case, the defendants filed a motion to dismiss for lack of jurisdiction, asserting that the Sherman Act does not apply to Puerto Rico because it is not a State.  (Docket No. 41.)  In response, the Government argues that Puerto Rico is indeed a State for the purposes of the Sherman Act since Córdova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A., 649 F.2d 36 (1st Cir. 1981) is controlling law and thus, dispositive on the issue of whether the Sherman Act applies.  (Docket No. 43 at 3.)[1]

I.    **Relevant Factual and Procedural Background**

In the Indictment, the Government contends that the defendants, five school bus owners and operators, rigged bids for public school transportation contracts.  (Docket No. 43 at 1.)  In 2013, the Municipality of Caguas held an auction for school bus services on various roots connecting school children to public schools.  (Docket No. 3 at ¶ 2.)   The Government contends that before the auction, the defendants and other school bus owners and operators met to divide the

---

[1] On October 27, 2015, the court instructed the Government to provide additional briefing on the issue of whether Córdova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A. is controlling law.  In compliance with that Order, the Government clarified its position as to Córdova, relying on Córdova's holding that Puerto Rico is a "State" under the Sherman Act.  (Docket No. 53 ¶ 1.)

**Criminal No. 15-cr-00361 (GAG)**

routes among themselves, agreeing who would submit the lowest bid for each route in the auction before the auction took place.  (Docket No. 3 ¶ 17.)  The Indictment alleges that the defendants concealed this plan to orchestrate the outcome of the auction from the Municipality and decided that the agreed-upon losers should refrain from bidding in some cases, and submit higher bids in others, in order to give the appearance of genuine competition.  (Id. ¶ 17(b), (d).)  As a result, the defendants won the public school transportation contracts.   (Id. ¶ 21.)   Additionally, the Government contends that the defendants used buses and fuel that traveled in interstate commerce, and that the conspirators' business activities were "within the flow of, and substantially affected, interstate commerce."  (Id. at ¶ 20.)

Presently before the court is the defendants' omnibus motion to dismiss this case for defects in the Indictment and for lack of jurisdiction pursuant to FED. R. CRIM. P. 12(b)(3). (Docket No. 41.)  Specifically, the defendants assert that because Puerto Rico is not a State, the Sherman Act does not apply to it.  (Docket No. 41 at 4, 8-13.)  Similarly, the defendants argue that the Rule of Lenity precludes a finding that Puerto Rico comes under the umbrella of the "several States" language in the Sherman Act.  (Docket No. 41 at 15.)  Defendants also argue that the Indictment fails to sufficiently allege a restraint on interstate commerce because the conspiracy at issue involves purely local activities.  (Docket No. 41 at 31.)  Therefore, the defendants argue that the Indictment fails to allege a restraint "among the Several States," or an impact upon interstate commerce, both essential elements of a violation of the Sherman Act.  (Docket No. 51 at 22-29.)

In its response, the Government relies upon Córdova to argue that the Sherman Act applies to Puerto Rico because it is to be treated like a State.  (Docket No. 43 at 4.)  Specifically, in this case, the Government argues that the First Circuit's *en banc* decision in Igartúa-De La Rosa v. United States, 417 F.3d 145 (1st Cir. 2005) did not overrule Córdova, and that the First Circuit

**Criminal No. 15-cr-00361 (GAG)**

recognized in <u>United States v. Peake</u>, No. 14-1088, 2015 WL 5970301, at *2 (1st Cir. 2015) that

<u>Córdova</u> still controls.  (Docket No. 43 at 5.)

Additionally, the Government argues that the Indictment sufficiently alleges business

activities restraining interstate commerce because the conspiracy involved federal funds, buses that

were shipped in interstate commerce, and gasoline that traveled in interstate commerce.  (Docket

No. 43 at 6-7.)  The Indictment alleges that the relevant activities took place in the flow of

interstate commerce and had a substantial effect on interstate commerce, both theories that support

prosecution under the Sherman Act.  (Docket No. 43 at 6.)

Essentially, the Government argues that clear First Circuit precedent establishes that the

Sherman Act applies to Puerto Rico, and that the Indictment sufficiently alleges a prima facie case

against the defendants.  <u>Id.</u>

## II.    Legal Analysis

An indictment must contain the elements of the offense charged and fairly inform a

defendant of the charge against him, and must enable him to "plead an acquittal or conviction in

bar of future prosecutions for the same offense."  <u>Hamling v. United States</u>, 418 U.S. 87, 118

(1974).  Rule 7(c) of the Federal Rules of Criminal Procedure provides that an indictment "shall be

a plain, concise and definite written statement of the essential facts constituting the offense

charged."  FED. R. CRIM. P. 7(c).  This requirement is satisfied, and an indictment is

constitutionally sound, if it serves to apprise the defendants of the charges against them so as to

prepare an adequate defense.  <u>United States v. Sepúlveda</u>, 15 F.3d 1161, 1192 (1st Cir. 1993).

Generally, inclusion of the time, place, manner, means and effect of the conspiracy will suffice.

<u>United States v. Campbell Hardware, Inc.</u>, 470 F. Supp. 430, 434 (D. Mass. 1979).

In this case, the Indictment alleges violation of Section 1 of the Sherman Act, which states:

**Criminal No. 15-cr-00361 (GAG)**

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

15 U.S.C. § 1.   Therefore, to survive a motion to dismiss, the indictment must set forth facts demonstrating a restraint of trade that implicates the several States or foreign nations.

### A.  Applicability of the Sherman Act

In this case, the allegations concern transportation services "between the continental United States and Puerto Rico."  (Docket No. 1 ¶ 13-22.)  Specifically, the Indictment alleges a conspiracy to allocate the market for contracts to provide school bus transportation services to students in Caguas, Puerto Rico.  (Docket No. 3 ¶ 13.)  These contracts were substantially funded by money from the U.S. Department of Education and the Puerto Rico Department of Education.  (Docket No. 3 ¶¶ 21-22.)  The defendants operated buses that were shipped in interstate commerce, and fueled by gasoline that traveled in interstate commerce.  (Docket No. 3 ¶ 23.)

In their motion to dismiss, the defendants argue that Puerto Rico is neither a State nor a foreign nation for the purposes of Section 1 of the Sherman Act because Puerto Rico is a Commonwealth, as per United States v. Jorge Mercado-Flores, _ F. Supp. 3d _, Crim. No. 14-466, 2015 WL 3764518, at *1 (D.P.R. June 4, 2015); United States v. Mercado-Flores, _ F. Supp. 3d _, Crim. No. 14-466, 2015 WL 5038215, at *1 (D.P.R. Aug. 26, 2015) (holding that statute prohibiting transportation of an individual with intent to engage in criminal sexual activity did not apply to Puerto Rico); United States v. Mercado-Flores, No. 14-466, 2015 WL 4132355 (D.P.R. July 8, 2015) (reconsideration denied).  Therefore, defendants' make the jurisdictional argument that Section 1 of the Sherman Act does not apply to the Commonwealth of Puerto Rico. Defendants argue that the Commonwealth of Puerto Rico is excepted by the plain language of the

Criminal No. 15-cr-00361 (GAG)

statute, which solely governs conduct "among the several States" or "with foreign nations." (Docket No. 41 at 13-15.)

The court notes that the cases upon which defendants rely do not pertain to the Sherman Act. In Mercado-Flores, the court held that the Mann Act does not apply to a purely intrastate criminal act committed within Puerto Rico. Similarly, in the Igartúa cases, the courts held that Article 1 § 2 of the United States Constitution only empowers "the People of the several States" to vote in federal elections, which excludes citizens of Puerto Rico. Igartúa v. United States, 626 F.3d 592 (1st Cir. 2010) (holding that residents of Puerto Rico did not have the right to vote for members of the House of Representatives); 132 S.Ct. 2376 (cert. denied.); Igartúa v. United States, 654 F.3d 99 (1st Cir. 2011) (denying petition for rehearing and holding that International Covenant on Civil and Political Rights was not a self-executing treaty, and thus not binding domestic law); Igartúa v. United States, 417 F.3d 145 (1st Cir. 2005) (rejecting claim that failure of Constitution to grant Puerto Rican citizens right to vote for President and Vice President violates U.S. treaty obligations); 547 U.S. 1035 (cert. denied.); Igartúa v. United States, 636 F.3d 18 (1st Cir. 2011) (permitting The Commonwealth of Puerto Rico to intervene); Igartúa v. United States, 229 F.3d 80 (1st Cir. 2000) (reversing and vacating 113 F. Supp. 2d 228 (D.P.R. 2000) and holding that U.S Constitution does not confer right to vote on U.S. citizens residing in Puerto Rico in national election for President and Vice-President based on *stare decisis*.) These cases do not bear on the applicability of the Sherman Act to Puerto Rico, but do demonstrate the evolving and complex relationship between the United States and Puerto Rico. See e.g., Consejo de Salud Playa de Ponce v. Rullan, 586 F. Supp. 2d 22 (D.P.R. 2008) (providing overview of legislative and jurisprudential evolution of Puerto Rico status); United States v. Maldonado-Burgos, No. 14-336, 2015 WL 5227480, at *2-3 (D.P.R. Sept. 8, 2015).

Criminal No. 15-cr-00361 (GAG)

Instead, the court must rely on clear First Circuit precedent in determining whether the Sherman Act applies. This issue was resolved in Córdova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A., 649 F.2d 36 (1st Cir. 1981) when the First Circuit held that for the purposes of the Sherman Act, Puerto Rico is treated as a State as a result of its Commonwealth status. Córdova & Simonpietri Ins. Agency Inc., 649 F.2d at 42. The Córdova court confronted the issue of whether the Sherman Act applies to the Commonwealth of Puerto Rico despite the fact that it is neither a "state" nor a "territory" under the terms of the Act. After evaluating the Federal Relations Act, the promulgation of the Puerto Rico Constitution and the increasing degree of Puerto Rican self-governance since the period when Puerto Rico was merely a territory, the court concluded that had the framers of the Sherman Act "been aware of the FRA and subsequent Constitutional developments [they] would have intended that Puerto Rico be treated as a "state" under the Act, once Commonwealth status was achieved." Córdova & Simonpietri Ins. Agency Inc., 649 F.2d at 39-42.

After Córdova, the First Circuit and its district courts have consistently held that Puerto Rico is a state for purposes of Section 1 of the Sherman Act.[2] In Peake, 2015 WL 5970301, at *2, the First Circuit affirmed the defendant's conviction under Section 1 of the Sherman Act, finding that he was correctly charged and that the indictment was not defective. The court cited Córdova, holding that it is "well-settled" that the Sherman Act applies in Puerto Rico.

Similarly, defendant's argument that the Rule of Lenity precludes finding that Puerto Rico is a State under the Sherman Act is unavailing. The Rule of Lenity requires that ambiguous criminal laws be interpreted in favor of defendants. Cleveland v. United States, 531 U.S. 12, 25

---

[2] For example, the First Circuit also relied on Córdova in Arroyo-Melecio v. Puerto Rican American Ins. Co., 398 F.3d 56, 66 (1st Cir. 2005), holding that "Puerto Rico is considered to be a state for purposes of sections 1 through 3 of the Sherman Act."

**Criminal No. 15-cr-00361 (GAG)**

(2000).  It is only applicable in cases of "deep ambiguity" or when there is "insurmountable doubt" as to the intent of Congress.  United States v. Jimenez, 507 F.3d 13, 20 (1st Cir. 2007).  The language of the Sherman Act is not ambiguous, nor is the intent of its founders.  Both have been clearly and consistently discerned and applied.  The defendants' Rule of Lenity argument has been squarely addressed and rejected by courts in this District.  In United States v. Farmer, 26 F. Supp. 3d 141 (D.P.R. 2014), the district court followed the reasoning of the First Circuit, finding that "in light of the First Circuit's unambiguous interpretation that Puerto Rico is a 'State' for the sake of 15 U.S.C. § 1 this argument is misdirected."  Id. at 145.  The Sherman Act is not ambiguous; therefore the Rule of Lenity is inapplicable to this case.

There is no reason to ignore this clear precedent, and the court will not manipulate it in order to arrive at an opposing outcome.  Rather, the principle of *stare decisis* dictates that the court apply First Circuit case law, rendering Córdova and its progeny binding on this court.  Therefore, it is, and remains, clearly established that the Sherman Act applies in Puerto Rico.

### B.  Sufficiency of Allegations of Restraint of Trade

Defendants also argue that the Indictment fails to sufficiently allege a restraint on trade.  Having concluded that Puerto Rico is considered a State for purposes of the Sherman Act, defendants' argument that the alleged conspiracy falls outside the scope of the Sherman Act because it is not "among the several States" is inoperable.  (Docket No. 41 at 22-23.)  Similarly, defendants' incorrect characterization of the alleged conspiracy as purely local in nature is insufficient basis to find that the Government has failed to demonstrate that the conspiracy implicates interstate commerce.  (Docket No. 41 at 23-24.)

In order to state a claim under Section 1 of the Sherman Act, the Indictment must allege facts that support the following three elements:  "(1) the existence of a contract, combination or

**Criminal No. 15-cr-00361 (GAG)**

conspiracy among two or more separate entities that (2) unreasonably restrains trade and (3) affects interstate or foreign commerce." Diaz Aviation Corp. v. Airport Aviation Servs., 762 F. Supp. 2d 388, 395 (D.P.R. 2011); see also, Standard Oil Co. v. United States, 221 U.S. 1 (1911).

The Indictment may establish the interstate commerce element by demonstrating that the offending activities took place in the flow of interstate commerce, or that the alleged business activities had a substantial effect on interstate commerce. See, e.g., Norte Car Corp v. FirstBank Corp., 25 F. Supp. 2d 9, 16 (D.P.R. 1998) (citing McLain v. Real Estate Bd. Of New Orleans, 444 U.S. 232, 246 (1980)); Ivision Int'l of P.R. v. Dávila-García, 364 F. Supp. 2d 166, 170 (D.P.R. 2005).

This standard is not difficult to satisfy. Tropical Air Flying Servs., Inc. v. Carmen Feliciano del Melecio, 158 F. Supp. 2d 177, 184 (D.P.R. 2001). It is not necessary to allege or prove an actual effect on interstate commerce to support federal jurisdiction. Summit Health, Ltd., v. Pinhas, 500 U.S. 322, 331 (1991); see also McLain v. Real Estate Bd. Of New Orleans, Inc., 444 U.S. 232, 243-44 (1980) ("If establishing jurisdiction required a showing that the unlawful conduct itself had an effect on interstate commerce, jurisdiction would be defeated by a demonstration that the alleged restraint failed to have its intended anticompetitive effect.") Therefore, to survive a motion to dismiss based on failure to plead facts supporting an effect on interstate commerce, the plaintiffs must merely "allege a general connection with interstate commerce, and an effect thereon resulting from defendant's allegedly illegal conduct." Diaz Aviation Corp. v. Airport Aviation Servs. Inc., 762 F. Supp. 2d 388, 395 (D.P.R. 2011).

In this case, the Indictment alleges that the defendants conspired to eliminate competition by rigging bids and allocating the market for school bus transportation contracts in Caguas, Puerto Rico. (Docket No. 3 ¶ 13.) These contracts were supported by the Puerto Rico Department of

**Criminal No. 15-cr-00361 (GAG)**

Education and the U.S. Department of Education, with funds that were within the flow of interstate commerce. Id. ¶ 21. Additionally, the defendants operated buses that were shipped in interstate commerce and fueled by gasoline that traveled in interstate commerce. Id. ¶ 22. The court also takes note of the Government's argument that the funds defendants won via anticompetitive behavior were rendered unavailable for use in another jurisdiction as a result. This impact alone would be sufficient to support a claim under the Sherman Act.[3] These facts are sufficient to support a reasonable inference that the alleged conspiracy implicated materials and funds that were both in the flow of interstate commerce and had a substantial effect on interstate commerce. Therefore, the Government has met its burden and the Indictment is not deficient. The motion to dismiss is hereby **DENIED**.

**III.    Conclusion**

        **SO ORDERED.**

        In San Juan, Puerto Rico this 18th day of December, 2015.

                                    *s/ Gustavo A. Gelpí*
                                    GUSTAVO A. GELPI
                                    United States District Judge

---

[3] E.g., United States v. Finis P. Ernest, Inc., 509 F.2d 1256, 1261 (7th Cir. 1975); Fuentes v. South Hills Cardiology, 946 F. 2d 196, 201 (3d Cir. 1991).